UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>VICTOR DOMINQUEZ,<br><br>　　　　　　　Defendant. | 5:24-CR-50095-CCT<br><br>**ORDER GRANTING MOTION FOR JUDGMENT OF ACQUITTAL ON COUNT 1 (AGGRAVATED SEXUAL ABUSE OF A MINOR)** |

　　　Defendant Victor Dominquez was charged by second superseding indictment with one count of aggravated sexual abuse of a minor, five counts of abusive sexual contact, and two counts of felony child abuse. Docket 53. A three-day jury trial took place February 3–5, 2025.

　　　After the government rested its case, Mr. Dominquez orally moved for judgment of acquittal on all counts. The government opposed the motion. The Court denied the motion for judgment of acquittal on Counts 2–8 but reserved ruling on Count 1 (aggravated sexual abuse of a minor), noting a concern regarding whether the government presented sufficient evidence for a reasonable jury to convict Mr. Dominquez of aggravated sexual abuse of a child as alleged in this count. All counts were submitted to the jury for deliberation. The jury returned a verdict finding Mr. Dominquez guilty on all counts. Docket 83.

## BACKGROUND

In Count 1 of the second superseding indictment, Mr. Dominquez was charged as follows:

> Between on or about March 2006 and March 2012, in Indian country, in the District of South Dakota, the defendant, Victor Dominquez, did knowingly engage and attempt to engage in a sexual act, that is: the penetration, however slight, of the anal and genital opening by a hand or finger, with [M.D.], an Indian person, and a child who had not attained the age of 12 years, with an intent to arouse and gratify the sexual desire of any person, all in violation of 18 U.S.C. §§ 1152, 2241(c), and 2246(2)(C).

Docket 53.

At trial, the government questioned M.D. about Mr. Dominquez touching her. The following colloquy occurred:

> Q: Were there ways that he was touching you around the same time that he was - - when you were the same age as when he was showing you pornography?
> A: Yes.
> Q: What do you remember about that?
> A: Like growing up, he was the one who was taking care of the kids, right, and he was the one that gave us baths, and whenever he would give me a bath - - and was like every single time he would always be focused on my vagina and how to clean it properly, but he would just use his fingers with like just his fingers, and it would feel really weird like I'd feel like a stone in my stomach and just kind of like  - - like a gross feeling like this just feels wrong, but at the same time, it felt kind of good.
> Q: Do you remember when he stopped bathing you and touching your vagina like there?
> A: That was because my mom pointed out that I was too old to be taking baths and that I should be showering.
> Q: How old were you when she pointed this out?
> A: 11.
> Q: And after that, did you start showering?
> A: Yeah.
> Q: So when you were being bathed by him, does this go back as long as you can remember?

2

| | |
|---|---|
| A: | Pretty much because he was the only one bathing us, like my mom didn't take no part in that. All I remember with being bathed was just him and then that specifically, but the whole, you need to make sure you clean down there good because nobody wants to smell like a smelly vagina basically, no one wants to smell that, no one wants to be near that. |
| Q: | But then he was doing it himself? |
| A: | Yep. |
| Q: | How did you feel about this as you were growing up? |
| A: | I thought it was normal if I'm being honest because it's like, I don't - - like he was the one bathing me. I didn't know if there was any other way to do this and I thought okay it must be important considering you're always reminding me every single time I'm taking a bath and you're doing that. |
| . . . | |
| Q: | Are there other ways that he would touch you other than putting his fingers in your vagina? |
| A: | Like whenever my mom would be gone like overnight, and I'd be allowed to go downstairs and spend the night in his room and sleep with him, he would like when we're sleeping together, 'cuz like cuddling - - cuddling basically, but just fondling me on my chest or on my butt and growing up too because I started to hit puberty like where I started growing breasts and stuff, I didn't really wear a sports bra or anything or a training bra because I wasn't really - - like I felt like I didn't have to, but you could clearly tell that I had boobs growing, and he would point that out or want to look at them or sometimes he would like make fun of me or like pinch them or flick them or he'd even point out like my butt, like I'd be doing like dishes or doing something like in the sink, he would like hit my butt or slap it but not like in a violent way, but like - - just kind of like, just for a reason to touch me, I guess. |

*See* transcript of M.D.'s testimony, pages 13-16.[1]

In support of his motion for judgment of acquittal on Count 1, Mr. Dominquez argued that the government failed to provide evidence of

---

[1] The rough transcript of M.D.'s trial testimony was prepared at the request of the parties and is attached as Exhibit A.

3

penetration.[2] Opposing the motion, the government initially argued that M.D. had testified that Mr. Dominquez penetrated her genital opening with his finger; that she described that it felt like a stone in her stomach when it happened; and that she described the sensations she felt. The Court asked the government to describe the evidence it believes establishes penetration. The government referred to M.D.'s testimony that Mr. Dominquez would clean her vagina with his fingers while she bathed; her description of the sensation that it felt like a rock in her stomach; and her statement that it felt weird but good. In the government's view, M.D. was describing how Mr. Dominquez's fingers felt inside of her and that M.D.'s testimony was sufficient because the legal definition of penetration is, penetration, however slight, of the labia. According to the government, M.D.'s testimony was describing movement on the inside of her body.

     The Court clarified that M.D. did not indicate that it was movement on the inside, to which the government responded that M.D. described a feeling that it felt good and felt like a rock in her stomach. The Court further clarified that the government was not claiming that M.D. said there was penetration. The government agreed and confirmed that it believes that M.D.'s description that she felt a stone in her stomach establishes penetration. Both parties acknowledged that they did not ask M.D. any additional questions to determine

---

[2] No transcript has been prepared of this portion of the jury trial. The Court's summary of the judgment of acquittal arguments throughout this order is derived from an audio recording and the Court's memory.

what part of her body she was describing when she said that Mr. Dominquez would focus on her vagina and use his fingers while bathing her.

The Court took the judgment of acquittal under advisement and directed the parties to return for its ruling and to settle jury instructions in approximately two hours, at 4:00 that same afternoon. During the two-hour break, the parties ordered the transcript of M.D.'s testimony, which was provided before court reconvened.

After the parties had the opportunity to review the transcript of M.D.'s testimony, they made further argument on the judgment of acquittal regarding Count 1. Mr. Dominquez argued that M.D.'s description of a "stone in her stomach" was a description of an emotional, not physical, feeling. He also claimed that while M.D. stated that it would feel like a gross feeling that feels wrong but at the same time kind of felt good, none of that testimony indicates any type of penetration. Mr. Dominquez noted that there was no clarification that Mr. Dominquez had inserted his fingers, even slightly, into M.D.'s vagina. Finally, Mr. Dominquez argued that while the government, in a question to M.D., said that Mr. Dominquez inserted his fingers into her vagina, M.D.'s answer was non-responsive in that she did not affirm or deny the government's statement and further the government's statement is not evidence.

In response, the government disagreed with Mr. Dominquez's characterization of M.D.'s testimony about it feeling like a stone in her stomach as an emotional feeling. The government argued that M.D. was describing how Mr. Dominquez's fingers felt inside of her. The government also asserted that

5

M.D.'s testimony that Mr. Dominquez used his fingers to clean her vagina was in fact her saying that he was cleaning the inside of her vagina, which in the government's view, is penetration.

The government also referred to a definition of penetration as the entry of the penis or other body part or object into the vagina or other bodily orifice. The government then noted that M.D., a 24-year-old woman, used the term "vagina" on her own, without prompting by the government. The government contrasted M.D.'s use of the term "vagina" with a young child's vague description of being touched in that child's "middle part" or "down there." According to the government, because "vagina" is a specific term meaning the canal that is the inside part of the genital area of a woman, within the genital opening, and further that the term "vagina" has a medically and commonly accepted meaning, M.D.'s testimony that Mr. Dominquez used his fingers on her vagina did not require further clarification.

Despite its reservations that the evidence was not sufficient for a reasonable jury to find Mr. Dominquez guilty on Count 1, the Court submitted all counts to the jury. Mr. Dominquez rested his case without presenting any evidence. The jury deliberated and returned a guilty verdict on all counts. Docket 84.

The Court now considers the judgment of acquittal still pending on Count 1 (aggravated sexual abuse of a minor).

**DISCUSSION**

**I.   Legal Standard**

Pursuant to Federal Rule of Criminal Procedure 29(b):

> The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved."

Fed. R. Crim. P. 29(b).

"Under Federal Rule of Criminal Procedure 29, a district court shall enter a judgment of acquittal if the evidence presented at trial is insufficient to sustain a conviction. A district court must consider a motion for judgment of acquittal with 'very limited latitude' and must neither assess the witnesses' credibility nor weigh the evidence." *United States v. Johnson*, 474 F.3d 1044, 1048 (8th Cir. 2007) (quoting *United States v. Thompson,* 285 F.3d 731, 733 (8th Cir. 2002)). "Rather, the district court must view the evidence in the light most favorable to the government, resolving evidentiary conflicts in the government's favor and accepting all reasonable inferences drawn from the evidence supporting the jury's verdict." *Id.*

"Jury verdicts are not lightly overturned[.]" *United States v. Shumaker*, 866 F.3d 956, 960 (8th Cir. 2017) (citation omitted). "However, the government is not entitled to inferences based on conjecture and speculation." *United States v. Aponte,* 619 F.3d 799, 804 (8th Cir. 2010) (citation omitted). Therefore, a judgment of acquittal should only be granted "when no reasonable

jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Hardin*, 889 F.3d 945, 949 (8th Cir. 2018) (citation omitted).

## II. Mr. Dominquez's Motion for Judgment of Acquittal on Count 1 is Granted

To convict Mr. Dominquez under 18 U.S.C. §§ 1152, 2241(c), and 2246(2)(C) for aggravated sexual abuse of a minor, the United States was required to prove beyond a reasonable doubt that between on or about March 2006 and March 2012, Victor Dominquez (1) did engage or attempt to engage in a sexual act, that is, the penetration, however slight, of the genital opening by a finger, with M.D., with an intent to arouse or gratify the sexual desire of any person; (2) that Victor Dominquez did such act knowingly; (3) that at the time of the offense M.D. had not attained the age of 12 years; (4) that M.D. is an Indian; and (5) that the offense occurred in Indian Country. *See United States v. DeCoteau*, 630 F.3d 1091, 1093 n.2 (8th Cir. 2011) (setting forth the elements of aggravated sexual abuse of a minor); *see also* 18 U.S.C. § 2246(2)(C) (defining a "sexual act" to include "the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person").

The Court focuses its analysis only on the first element of Count 1, penetration in particular, as Mr. Dominquez did not argue that the evidence was insufficient to prove the age of the victim (M.D.), that M.D. was an Indian, that the alleged offense took place in Indian Country, or that the alleged sexual

8

act was done with the intent to arouse or gratify the sexual desire of any person.

While the government asserts that the facts presented at trial clearly show evidence of penetration, the government does not dispute that M.D. never said that Mr. Dominquez penetrated her genital opening. Rather, M.D. testified that Mr. Dominquez would give her baths. Exhibit A at 13. She further testified that when he would give her a bath, "he would always be focused on [her] vagina and how to clean it properly[.]" *Id.* She then said the following: "he would just use his fingers with like just his fingers, and it would feel really weird like I'd feel like a stone in my stomach and just kind of like - - like a gross feeling like this just feels wrong, but at the same time, it felt kind of good." *Id.*

The Court acknowledges that a victim's testimony alone can be sufficient to prove aggravated sexual abuse. *United States v. Kirkie,* 261 F.3d 761, 768 (8th Cir. 2001). However, M.D.'s testimony does not indicate if she was touched on the "inside" or "outside" of her vagina. And while the government assumed M.D. meant "inside" when M.D. used the word "vagina," M.D. was not asked to explain what the word "vagina" means to her. She also was not asked any additional questions to clarify that when she said Mr. Dominquez "would always be focused on [her] vagina and . . . would just use his fingers . . . and it would feel really weird like [she'd] feel like a stone in [her] stomach[,]" she meant that he touched the inside of her vagina and thus penetrated her genital opening.

9

The government urges the Court to conflate the touching M.D. described with penetration and find that when M.D. used the term "vagina" she meant "genital opening." While the Court acknowledges that M.D. was 24 years old at the time she testified, the Court is left to speculate whether M.D.'s use of the term "vagina" described penetration, however slight, of her genital opening by Mr. Dominquez's fingers.[3] Unfortunately, M.D. was not asked to clarify the location of Mr. Dominquez's fingers in relation to her genital opening. Yet the crime charged in Count 1 is anatomically specific; thus, the use of the term "*vagina*" does not equate to penetration, however slight, of the *genital opening. See United States v. Plenty Arrows*, 946 F.2d 62, 65 (8th Cir. 1991) (noting that the definition of a sexual act "is anatomically specific"). Moreover, while the Court suspects that M.D. likely would have given testimony establishing Mr. Dominquez penetrated her genital opening with his finger, had she been asked clarifying questions, the Court "cannot sustain a conviction based on mere suspicion or possibility of guilt." *See United States v. Reddest*, 512 F.3d 1067, 1072 (8th Cir. 2008) (citation omitted).

---

[3] The government referred to the language "attempt to engage in a sexual act" in Count 1 and suggested that the jury could find Mr. Dominquez guilty of such an attempt. However, the government did not identify evidence establishing that Mr. Dominquez attempted to engage in penetration, which is the sexual act charged in Count 1. Rather, the government relied on the evidence suggesting Mr. Dominquez touched M.D.'s vagina with his fingers when bathing her. Importantly, however, the Eighth Circuit explained that evidence of a different sexual act (e.g., the touching of the genitalia) is not sufficient evidence of a "substantial step"; thus, it does not support an inference that the defendant intended to engage in penetration but failed to follow through. *United States v. Fool Bear*, 903 F.3d 704, 709 (8th Cir. 2018).

The Eighth Circuit deemed insufficient similar unclear testimony in *Reddest*. In that case, the victim[4] initially "testified that Reddest's finger went '[r]ight in my - - almost close to my [hand gesture].'" *Id.* at 1071 (alteration in original) (citing the trial transcript). The government then asked what her hand gesture was referring to, and she replied, "[m]y hole." *Id.* (alteration in original) (citing the trial transcript). The victim "affirmed that she considered her hole a part of her vagina, and affirmed that her hole was 'where a woman puts the tampon in.'" *Id.* at 1071–72 (citing the trial transcript). However, during cross-examination, she was asked specifically whether Reddest had put any part of his hand in her, to which she answered, "[n]o," "[h]e touched my vagina." *Id.* (citing the trial transcript). She was then asked in a follow-up question whether he only touched the outside of her vagina, and she replied yes. *Id.*

On appeal, Reddest argued that the evidence was insufficient to prove that he penetrated the genital opening of the victim with his finger as charged in the indictment. *Id.* at 1071. The court found it unnecessary to construe the meaning of "genital opening" because the evidence in the light most favorable to the verdict was not sufficient to prove penetration of the genital opening. *Id.* at 1072. In so concluding, the Eighth Circuit noted that "[t]he only evidence that is arguably sufficient to prove penetration of the genital opening, however slight, is [the victim's] statement that Reddest's finger went '[r]ight in my - - almost close to my [hole].'" *Id.* at 1072. But the court found such evidence

---

[4] The victim in *Reddest* disclosed the abuse when she was approximately 15 years old. 512 F.3d at 1069.

11

insufficient because "[t]his description of the assault is ambiguous[,]" and "it is not clear where Reddest's finger was or how 'close' it was to the genital opening." *Id.* The court also found unclear "whether the second half of [the victim's] statement ('almost close to my [hole]') retracts, clarifies, or modifies the first half ('[r]ight in my')." *Id.* According to the court, "these facts matter" to "the terms of the statutory provision charged by the Government"; "yet the Government did little to clarify them further." *Id.*

The court also acknowledged the victim's "statement that Reddest's finger was 'in' a vaguely identified location[,]" noting that "when read in isolation," this statement "could imply at least slight penetration of [the victim's] labium." *Id.* However, because a conviction cannot be sustained "based on mere suspicion or possibility of guilt[,]" the court held that "even when construed in the light most favorable to the verdict, this single, nondescript, internally inconsistent statement laden with ambiguity is insufficient to permit a reasonable jury to find Reddest guilty beyond a reasonable doubt[.]" *Id.* (citation omitted). Ultimately, the court held that "no reasonable jury could find Reddest guilty of penetration of the genital opening beyond a reasonable doubt based on the ambiguous and nonspecific evidence produced by the government." *Id.* at 1073.

The Eighth Circuit reached the same result in *Plenty Arrows*, 946 F.2d 62. In that case, a young male victim testified that "Plenty Arrows touched him 'from my back of my behind.'" *Id.* at 65. While the government tried to clarify what the victim meant, it did not ask further questions to determine "whether

12

he was referring to his buttocks, anus, or to some other part of his anatomy." *Id.* at 65. The government argued "that the jury could appropriately have taken into account the victim's young age in evaluating the testimony and could have inferred from the victim's statements that penetration had occurred." *Id.* at 64. The government also argued "that a young child would not be familiar with or use the word 'anus'[.]" *Id.* at 65. The Eighth Circuit agreed that it is likely a young child would not use the word "anus"; however, the court found that the evidence presented was "too vague to support the inference that contact involving penetration occurred between the penis and anus" and that evidence lacked the degree of anatomical specificity required by the statute. *Id.* Therefore, the court held that the evidence was insufficient to sustain a finding of aggravated sexual abuse. *Id.*

When, unlike here, the victim clarifies whether the touching occurred on the inside or outside or when there exists additional contextual testimony or supporting evidence, the Eighth Circuit has found sufficient evidence to prove penetration. For example, in *DeCoteau*, the victim testified that DeCoteau had "touched her with his bare hand 'under' her clothes, and that he touched her on the 'inside,' not the 'outside,' of 'those parts'" that she had identified on an anatomical drawing. 630 F.3d at 1097. The government also presented evidence of DeCoteau's taped admission to touching the victim's vagina. *Id.* Therefore, the Eighth Circuit upheld DeCoteau's conviction for aggravated sexual abuse of a minor. *Id.*

Similar specific testimony and evidence was considered in *United States v. Espinosa,* 585 F.3d 418 (8th Cir. 2009). In that case, the victim testified that the defendant "removed her clothes, got on top of her, and 'stuck his in me'"; she pointed, using an anatomically correct diagram of an unclothed female, to her genital area when stating where the defendant touched her; she pointed, using a anatomically correct diagram of an unclothed male, to the genital area when stating which part of the defendant touched her; and she said that it hurt when the defendant got on top of her. *Id.* at 424. The government also presented evidence of the victim's physical exam, which showed that the victim's "vaginal area was abraded, sore, raw, swollen, red, and 'irritated-looking.'" *Id.* The court thus held that the evidence was sufficient to prove penetration. *Id.* at 425.

Here, even when the evidence is construed in a light most favorable to the verdict while giving the government all reasonable inferences, it is simply too ambiguous and nonspecific to prove that Mr. Dominquez engaged in an act of penetration, however slight, of M.D.'s genital opening. Therefore, the Court concludes that the government did not meet its burden of proof as a matter of law and further that no reasonable jury could find Mr. Dominquez guilty of aggravated sexual contact of a child as charged in Count 1 of the second superseding indictment.

Thus, it is hereby

ORDERED that Mr. Dominiquez's motion for judgment of acquittal on Count 1 is granted.

Dated February 19, 2025.

                              BY THE COURT:

                              /s/ *Camela C. Theeler*
                              CAMELA C. THEELER
                              UNITED STATES DISTRICT JUDGE